# Third District Court of Appeal

## State of Florida

Opinion filed February 19, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1958
Lower Tribunal No. 23-15289
_____

**Florida Department of Children and Families, et al.,**
Petitioners,

vs.

**Foster Parents of K.J.,**
Respondents.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Scott M. Bernstein, Judge.

Karla Perkins, for petitioner Department of Children and Families; Sara Elizabeth Goldfarb and Sarah Todd Weitz (Tallahassee), for petitioner Guardian ad Litem.

Joyce Law, P.A., and Richard F. Joyce, for respondents.

Before LOGUE, C.J., and EMAS and SCALES, JJ.

LOGUE, C.J.

The Florida Department of Children and Families and the Statewide Guardian ad Litem Office petition for a writ of certiorari quashing the order of the trial court granting limited party status to the caregivers of K.J. ("Caregivers"). This status was granted in a proceeding in which the Department is seeking to transfer custody from the Caregivers to allow a maternal aunt to adopt K.J. and unite K.J. with his sibling. The issue presented concerns whether the Caregivers are entitled to party status under subsection (3) of section 39.522, Florida Statutes. While the statute at issue is far from a model of clarity, we agree with the Department and the Guardian that a caregiver is not entitled to party status under subsection (3) unless he or she qualifies for the rebuttable presumption that is at the heart of subsection (3).

## BACKGROUND

On December 13, 2023, eleven days after he was born, the court sheltered K.J. due to issues relating to his mother's substance abuse. It had previously sheltered K.J.'s sibling. The court gave custody of K.J. to the Department. The Department then placed K.J. in the custody of the Caregivers who have cared for K.J. essentially since he was born. On September 23, 2024, within a day of the parental rights of K.J.'s mother being terminated, the Department filed a motion to change the placement of K.J.

2

from the Caregivers to a maternal aunt who wants to adopt both K.J. and his sibling. The Caregivers, noting they had maintained custody of K.J. for at least nine months, responded by filing a motion indicating they also desired to adopt K.J. and seeking party status.

The trial court ruled (1) the Caregivers were not entitled to the presumption afforded by section 39.522(3)(b), but (2) the Caregivers were entitled to be granted limited party status under section 39.522(3)(c)4.a. The Department and the Guardian timely filed this petition.

**ANALYSIS**

"Properly stated in its modern form, which puts the jurisdictional element first, a party seeking a writ of certiorari must establish '(1) a material injury in the proceedings that cannot be corrected on appeal (sometimes referred to as irreparable harm); and (2) a departure from the essential requirements of the law.'" Schaeffer v. Medic, 394 So. 3d 128, 130–31 (Fla. 3d DCA 2024) (quoting Fla. Power & Light Co. v. Cook, 277 So. 3d 263, 264 (Fla. 3d DCA 2019)).

Courts have routinely held that the improper granting of party status in a proceeding under Chapter 39 of the Florida Statutes establishes irreparable harm. "An order allowing intervention as a party in a dependency action satisfies the irreparable harm which cannot be remedied on appeal

3

requirement for certiorari jurisdiction because it poses the risk of interference with parental rights and actions by the Department to protect the child while the dependency case is pending." <u>Statewide Guardian ad Litem Off. v. J.B.</u>, 361 So. 3d 419, 422 (Fla. 1st DCA 2023). This is because, among other reasons, "time is of the essence for establishing permanency for a child in the dependency system." <u>Id.</u> (quoting § 39.0136(1), Fla. Stat.). We have jurisdiction.

Turning to the merits, Chapter 39 excludes caregivers from party status, with limited exceptions. <u>See, e.g.</u>, § 39.01(58), Fla. Stat. (2023).[1] The limited exception at issue in this matter occurs in subsection (3) of section 39.522. Section 39.522 establishes processes for post-disposition changes in custody. Its subsections provide different processes for different changes in custody. For example, subsection (2) concerns changes in custody in general. Under that subsection, if "the [D]epartment" or "other interested person" files a motion to change custody, the matter will be brought before the court. Further, "[i]f <u>any party or the current caregiver</u> denies the need for a change, the court shall hear all parties in person or by counsel, or both." § 39.522(2)(a), Fla. Stat. (emphasis added).

---

[1] Effective July 1, 2024, the definition of "party" now appears in section 39.01(61).

In contrast, subsection (4) involves the special circumstance where a change in custody would reunite a child with a parent. § 39.522(4), Fla. Stat. Subsection (5) involves the special circumstance where a child in the custody of one parent would have his or her custody changed to "be reunited with the other parent." § 39.522(5), Fla. Stat. Subsection (6) involves the special circumstance where the Department seeks to remove a child from the child's own home after being placed there. § 39.522(6), Fla. Stat. Finally, subsection (7) allows for the immediate removal of a child by departmental officials or law enforcement when a court-ordered caregiver requests such change. § 39.522(7), Fla. Stat.

The subsection at issue here, subsection (3), begins by establishing that, where the Department seeks to change the custody of a child, a rebuttable presumption exists that it is in the best interest of the child to remain permanently with the caregiver provided five conditions exist. Section 39.522(3)(b), which establishes the presumption, sets forth the five conditions:

> 1. In a hearing on the change of physical custody under this section, there shall be a rebuttable presumption that it is in the child's best interest to remain permanently in his or her current physical placement if:
> a. The child has been in the same safe and stable placement for 9 consecutive months or more;

5

b. Reunification is not a permanency option for the child;

c. The caregiver is able, willing, and eligible for consideration as an adoptive parent or permanent custodian for the child;

d. The caregiver is not requesting the change in physical placement; and

e. <u>The change in physical placement being sought is not to reunify the child with his or her parent or sibling</u> or transition the child from a safe and stable nonrelative caregiver <u>to a</u> safe and stable <u>relative caregiver</u>.

§ 39.522(3)(b)1., Fla. Stat. (emphases added).

Subsection (3) then requires that notice be given to a caregiver meeting the five conditions for the presumption: "The [D]epartment or community-based care lead agency must notify a current caregiver who has been in the physical custody placement for at least 9 consecutive months and <u>who meets all the established criteria in paragraph (b)</u> of an intent to change the physical custody of the child." § 39.522(3)(c)1., Fla. Stat. (emphasis added). Subsection (3) then allows the caregiver who was given the notice to object in writing within five days. § 39.522(3)(c)2., Fla. Stat. If such an objection is timely filed, the Department's intended change in placement is held in abeyance until the court rules on it. § 39.522(3)(c)3., Fla. Stat. In these circumstances, the court is required to conduct an evidentiary hearing to determine if the presumption is rebutted. § 39.522(3)(c)2., Fla. Stat. But during the evidentiary hearing, "[t]his

6

presumption may not be rebutted solely by the expressed wishes of a biological parent, a biological relative, or a caregiver of a sibling of the child." § 39.522(3)(b)3., Fla. Stat.

Most pertinent here, within seven days of the written notice of the objection by the caregiver, a court must conduct an initial status conference. At the status conference, the court must, among other things, "[g]rant party status to the current caregiver who is seeking permanent custody and has maintained physical custody of that child for at least 9 continuous months for the limited purpose of filing a motion for a hearing on the objection and presenting evidence pursuant to this subsection." § 39.522(3)(c)4.a., Fla. Stat.

Turning to the subject case, the trial court found, and we agree, that the Caregivers were not entitled to subsection (3)'s presumption. The presumption only applies when the "change in physical placement being sought is not to reunify the child with his or her parent or sibling or transition the child from a safe and stable nonrelative caregiver to a safe and stable relative caregiver." § 39.522(3)(b)1.e., Fla. Stat. Accordingly, the Caregivers were not entitled to the presumption because the permanent placement with the Caregivers would frustrate reunification of the child with a sibling under the care of a maternal aunt.

Nevertheless, the Caregivers maintain they are entitled to party status. Like the trial court, they focus on the words of subsection (3)(c)4.a. quoted above and reason they are entitled to party status because they filed a written objection to the change in custody, are willing to adopt, and had maintained physical custody of K.J. for at least 9 months.

We acknowledge that this interpretation is plausible if this subsection is read literally and in isolation from the remainder of subsection (3). We cannot, however, read the language in isolation but must consider "the entire text, in view of its structure and of the physical and logical relation of its many parts." DeSantis v. Dream Defs., 389 So. 3d 413, 425 n.12 (Fla. 2024) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012)).

Looking at the entire text, the interpretation advocated by the Caregivers would create at least two anomalies. First, subsection (3) requires its notice to be given only to "a current caregiver who has been in the physical custody placement for at least 9 consecutive months and who meets all the established criteria in paragraph (b)[.]" § 39.522(3)(c)1., Fla. Stat. But the Caregivers' interpretation would allow a caregiver who was not entitled to notice because it had not met "all the established criteria in paragraph (b)" to still be entitled to file an objection to the notice, put the

8

Department's proposed change in placement in abeyance, and gain party status. There is no reason why the Legislature would intend persons to have the right to party status but not a right to the notice from which the party status springs.

Second, subsection (3) indicates that party status is granted for the purpose of "presenting evidence pursuant to this subsection." § 39.522(3)(c)4.a., Fla. Stat. The evidence discussed concerns evidence that can be used to disprove the presumption. See, e.g., § 39.522(3)(b)3., Fla. Stat. ("This presumption may not be rebutted solely by the expressed wishes of a biological parent, a biological relative, or a caregiver of a sibling of the child."). The evidentiary hearing subsection (3) requires is for the purpose of rebutting the presumption: "In order to rebut the presumption established in this paragraph, the court shall hold an evidentiary hearing on the change in physical custody to determine if the change in placement is in the best interest of the child." § 39.522(3)(b)2., Fla. Stat. There is no reason why the Legislature would grant party status to rebut the presumption when no presumption exists because the caregiver does not qualify for the presumption.

Rather than adopt an interpretation that puts the statute at odds with itself, we interpret subsection (3) as placing the rebuttable presumption at

the center of its meaning. We interpret subsection (3) to involve the special circumstance concerning a change in custody where the caregiver is entitled to the rebuttable presumption set out in subjection (3). Under the interpretation that we adopt, the provision setting forth the two conditions for party status in section 39.522(3)(c)4.a. ("the current caregiver who is seeking permanent custody and has maintained physical custody of that child for at least 9 continuous months") serves merely as a shorthand reference to the antecedent provision setting forth the five conditions for notice in section (3)(c). ("a current caregiver who has been in the physical custody placement for at least 9 consecutive months and who meets all the established criteria in paragraph (b)"). We acknowledge this interpretation has its own difficulties. But in our view, it reflects the best reconciliation of the various provisions of the statute with reference to "all the textual and structural clues that bear on the meaning of a disputed text." Conage v. United States, 346 So. 3d 594, 598 (Fla. 2022) (citations and quotations omitted).

In reaching this result, we are persuaded by the reasoning of the First District in Statewide Guardian ad Litem Off. v. J.B., 361 So. 3d 419 (Fla. 1st DCA 2023). In that case, a trial court granted party status to a caregiver who maintained physical custody of a child for at least 9 months but who did not qualify for subsection (3)'s presumption because the Department's change

in placement sought reunification with a parent. The First District quashed the order. It held that, because the caregiver did not qualify for the presumption and therefore the notice in subsection (3), the caregiver did not qualify for the party status under subsection (3). "From the notice requirement in section 39.522(3)(c)1. springs other caregiver's rights in section 39.522(3)(c)2.-4. and (3)(d)-(e), including the provisions in section 39.522(3)(c)4.a. used by the trial court to grant party status to the caregivers." Id. at 422-23. The First District reasoned, therefore, that because, "paragraph (b) of section 39.522(3) [did] not apply in this case, [ ] the caregivers should not have been granted party status." Id. at 423 ("[T]he requirements in section 39.522(3)(b)1.b. and (3)(b)1.e. were not met, meaning section 39.522(3)(c)1.-4. does not apply.").

Writ issued; order under review quashed.